**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 25, 2018**

# In the Court of Appeals of Georgia

A18A0821. BURKES v. THE STATE.

MERCIER, Judge.

Samuel Lee Burkes, Jr. was charged with trafficking in methamphetamine. Before trial, Burkes moved to suppress evidence police recovered while searching his vehicle during a traffic stop. Burkes, who was on parole at the time of the stop, had signed as a condition of his parole a Fourth Amendment waiver authorizing warrantless searches of his person and any property under his control. The court denied the motion to suppress based, in part, on Burkes's Fourth Amendment parole waiver. After a bench trial on stipulated facts, Burkes was found guilty of trafficking in methamphetamine. On appeal, he challenges the denial of his motion to suppress, the sufficiency of the evidence to support the conviction, and the court's consideration of hearsay testimony. Finding no error, we affirm.

1. Burkes contends that the trial court erred by denying his motion to suppress based on the Fourth Amendment parole waiver. On appeal, he asserts that the waiver at issue only allowed searches by parole officers, and that his parole officer could not consent to a search by or transfer that authority to a police officer.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the trial court's findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

*Stroud v. State*, 286 Ga. App. 124, 125 (1) (648 SE2d 476) (2007) (footnotes omitted); see *State v. Colvard*, 296 Ga. 381, 382 (1) (768 SE2d 473) (2015). "An appellate court determining whether a search was lawful may consider all relevant evidence of record, including that adduced at a pretrial suppression hearing and at trial." *Stroud*, supra. The trial court's application of the law to undisputed facts is subject to de novo review. *Thompson v. State*, 289 Ga. App. 661 (658 SE2d 122) (2007). A trial court's ruling on a motion to suppress will be upheld if it is right for any reason. *Reynolds v. State*, 280 Ga. App. 712, 716 (1) (634 SE2d 842) (2006).

Viewed in the light most favorable to the trial court's findings and judgment, the evidence adduced at the suppression hearing and at the bench trial on stipulated facts showed the following. In March 2015, a police lieutenant with the City of Acworth was on patrol near a motel when a man flagged him down. The man told the lieutenant that a man and woman had been involved in a verbal altercation at the motel, and that the woman had been outside a room, threatening to call the police and report what the man had in the room. From his parked police car, the lieutenant began surveillance of the motel room. He saw a man leave the room, enter a vehicle, park it near the room, enter the room, and move items from the room to the vehicle. As the man was driving out of the parking lot, the lieutenant contacted another police officer who was in the area, Officer C. H., briefed him on the situation, and directed him to watch for the vehicle and see if he could establish probable cause to initiate a traffic stop.

Officer C. H. followed the vehicle and initiated a traffic stop for a suspected window tint violation; the window tint level registered "thirty percent." Officer C. H. testified that because the tint level was less than 32 percent, the tint was illegal, see OCGA § 40-8-73.1 (b) (2); the officer learned during the stop that the vehicle was a rental vehicle, and he concluded that the vehicle was thus exempt from the statute's

3

tint limits.[1] The vehicle's driver, Burkes, appeared to be nervous. Officer C. H. conducted a GCIC check of Burkes's driver's license and discovered that Burkes was on parole. Officer C. H. walked back to the vehicle and stood at the back door (while a second officer stood at the front door). Officer C. H. asked Burkes "what he was on parole for." At first, Burkes said he did not know, but he eventually stated that he was on parole for "[d]rugs, possession, I think, distribution." Officer C. H. saw "baggies" protruding from an open bag on the back seat. The window was down, and Officer C. H. smelled numerous different odors, such as air fresheners and cologne, which he stated are often used to mask odors inside a vehicle.

Officer C. H. testified that he contacted Burkes's parole officer and "asked if Mr. Burkes had signed a Fourth Amendment waiver to search the vehicle." The trial court asked if "there was a Fourth Amendment waiver," and Officer C. H. replied:

---

[1] On appeal, Burkes does not challenge the lawfulness of the stop or the detention. In any event, see *Walker v. State*, 322 Ga. App. 821, 824 (1) (744 SE2d 385) (2013) (holding that when an officer witnesses a traffic offense, even a minor one such as a window tint violation, the resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop) (physical precedent only); see also *Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004) (the fact that the officer determined from a field test of the window tint that a citation for violating OCGA § 40-8-73.1 was not warranted did not render the stop – which was based on a suspected window tint violation – improper).

4

"There was a Fourth Amendment waiver." Based on Burkes's status as a parolee, his parole officer's confirmation that there was a Fourth Amendment waiver, and other information the officers had that the vehicle "probably" contained narcotics, the officers searched the vehicle. The search revealed five bags of a solid material believed to be methamphetamine, a small bag containing leafy material, packaging materials, a digital scale, and $1,452 in cash. The suspected methamphetamine weighed 195.75 grams. Analysis by the Georgia Bureau of Investigation crime laboratory confirmed the presence of methamphetamine in the sample tested, which sample weighed 67.34 grams.

As part of the bench trial, the parties stipulated that the vehicle search was conducted "pursuant to [Burkes's] parole Fourth Amendment Waiver," and they attached to the "Stipulations" pleading a copy of the parole conditions certificate containing the consent to search provision. The parole conditions certificate (which showed effective parole dates beginning in August 2013 and ending in July 2015) provided: "My parole officer or any other parole officer may, at any time, conduct a warrantless search of my person, papers, and place of residence, automobile, or any other property under my control." Such Fourth Amendment waivers by parolees have been held to be valid. See *State v. Cauley*, 282 Ga. App. 191, 195 (1) (638 SE2d 351)

5

(2006); *Dean v. State*, 151 Ga. App. 847, 849 (261 SE2d 759) (1979) (requiring consent to a search as a condition of parole is not unreasonable). See also *Samson v. California*, 547 U. S. 843, 853 (III) (126 SCt 2193, 165 LE2d 250) (2006) (upholding validity of suspicionless search of a parolee conducted by a police officer as a condition of parole; explaining that "a State has an overwhelming interest in supervising parolees," and that recidivism "is the very premise behind the system of close parole supervision.") (citations and punctuation omitted).

On appeal, Burkes argues that the Fourth Amendment parole waiver did not justify the search because the waiver only allowed searches by a parole officer, and a parole officer cannot consent to a search by or transfer his authority to a police officer.

In *Samson*, supra at 848 (II), the Supreme Court of the United States stated:

Under our general Fourth Amendment approach we examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment. Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

(citations and punctuation omitted). The *Samson* Court concluded that "the Fourth Amendment does not prohibit a police officer from conducting [even] a suspicionless search of a parolee." Id. at 853 (III), 857 (IV) (citations and punctuation omitted). The Court "examin[ed] the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' including the plain terms of the parole search condition," and concluded that the "petitioner did not have an expectation of privacy that society would recognize as legitimate." Id. at 852 (III) (citation and footnote omitted).

In Georgia, we have held that requiring a parolee's consent to a search of his property as a condition of parole is not unreasonable. *Dean*, supra. And "a search made pursuant to a special condition of parole that is based upon a reasonable or good-faith suspicion of criminal activity is permissible." *Thomas v. State*, 287 Ga. App. 163, 167 (1) (651 SE2d 116) (2007) (footnote and punctuation omitted). In this case, police officers had reasonable grounds to believe that the vehicle driven by Burkes contained illegal drugs. There is no evidence that the police or parole officers acted in bad faith, in an arbitrary and capricious manner, or solely to harass Burkes. See *Cauley*, supra at 195-196 (1). We emphasize that as a condition of his parole, Burkes agreed to waive his Fourth Amendment rights and consented to searches of

7

property under his control by parole officers, and that his parole officer told the police officer that Burkes had waived his Fourth Amendment rights. Under the circumstances of this case, the fact that police officers conducted the search does not remove it from the "consent-waiver" exception to the probable cause and warrant requirement of the Fourth Amendment. See *Dean*, supra at 849-850 (upholding search of probationer by police officers in halfway house where probationer had agreed to periodic searches by house staff as a condition of probation, but house staff requested that police officers conduct the search).

Notably, even "a warrantless search based on unauthorized consent [can] . . . be upheld if the law enforcement officer conducting the search reasonably (albeit erroneously) believed the consent given was valid." *Ford v. State*, 214 Ga. App. 284, 286-287 (3) (447 SE2d 334) (1994) (citations, punctuation and emphasis omitted). The facts available to Officer C. H. at the time of the search led him to reasonably believe that Burkes, a parolee, had signed a Fourth Amendment waiver validly consenting to a search of the vehicle under his control. See generally id. This enumeration is without merit.

2. In a related but separately enumerated claim of error, Burkes contends that the trial court erred by finding that the search was lawful when (a) the only evidence

8

of the Fourth Amendment waiver introduced at the suppression hearing was hearsay; (b) a Fourth Amendment waiver does not permit searches without reasonable grounds; and (c) good faith does not validate an otherwise invalid search. There was no error.

(a) A trial court is permitted to consider hearsay evidence at a hearing on a motion to suppress.[2] See OCGA §§ 24-1-2 (c); 24-1-104 (a); 24-4-402. Moreover, the waiver document was admitted at the bench trial, the admissibility of which was stipulated to by Burkes. Because this Court considers all evidence of record, including evidence introduced at the suppression hearing and at trial, hearsay was not the only evidence that Burkes waived his Fourth Amendment rights. See *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005); *Bailey v. State*, 338 Ga. App. 428, 431 (1) (n. 16) (790 SE2d 98) (2016), overruled in part on other grounds by *Wellborn v. State*, 301 Ga. 106, 107 (1) (n. 2) (799 SE2d 793) (2016).

(b) A search made pursuant to a special condition of parole that is based on a reasonable or good-faith suspicion of criminal activity is permissible. *Cauley*, supra at 195 (1). Here, Officer C. H. had a good-faith suspicion of criminal activity – starting

---

[2] Georgia's new Evidence Code applies because the hearing on the motion to suppress and the subsequent bench trial were held after January 1, 2013. See *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015).

9

with the tip, and followed by his own observations of Burkes's behavior, objects in plain view in the vehicle, odors emanating from the vehicle, and Burkes's history of drug offenses. Under the totality of circumstances, there existed a sufficiently reasonable or good-faith suspicion for the search so that officers were not acting in an arbitrary, capricious or harassing manner. See generally *Hess v. State*, 296 Ga. App. 300, 302-303 (2) (674 SE2d 362) (2009) (regarding Fourth Amendment waiver for probationer); *Thomas*, supra at 166 (1) (noting that a parolee has even fewer expectations of privacy than a probationer, because parole is more akin to imprisonment than is probation).

(c) Burkes contends that "[e]ven if the search was conducted based upon an officer's good faith belief that a Fourth Amendment waiver is valid, such a good faith belief does not validate an otherwise invalid search." His contention is unpersuasive.

The case upon which he relies, *State v. New*, 331 Ga. App. 139 (770 SE2d 239) (2015), does not require reversal in this case. First, the holding in that case is physical precedent only. Second, *New* is distinguishable because law enforcement officers searched New believing that he was on probation and subject to a Fourth Amendment waiver of rights, when actually he was not on probation and *there was no valid waiver in place at the time of the search*. Id. at 141-144 (2), (3). The trial court in this case

10

was authorized to conclude that Burkes waived his Fourth Amendment rights as a condition of parole and that the search was lawful. See *Thomas*, supra at 166-167 (1) (the search of a parolee's residence was permissible because it was made pursuant to a Fourth Amendment waiver and the officers had a reasonable or good-faith suspicion of criminal activity); *Ford*, supra at 287 (3) (a consent to search by a person who, in the officer's good faith reasonable belief, has the authority to consent to the search, is valid).

3. Burkes contends that the trial court erred by considering hearsay evidence (Officer C. H.'s testimony about his phone call with the parole officer) for its probative value at the hearing on his motion for new trial. It is unclear why Burkes raises the hearsay issue in connection with the hearing on the motion for new trial. In any event, Burkes concedes that he failed to object to the consideration of the evidence at the time it was offered.

Thus, "under Georgia's new Evidence Code, the rulings related to this evidence are subject to review on appeal for 'plain error affecting substantial rights.'" *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (citation omitted). For plain error review of rulings on evidence, we apply the following standard:

First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 327 (3) (citations and punctuation omitted). In this case, Burkes affirmatively waived the alleged defect by stipulating that the vehicle was searched "pursuant to his parole Fourth Amendment waiver" and that the parole waiver attached as an exhibit to the Stipulations pleading was admissible in evidence. Burkes has not demonstrated plain error. See generally *Crankshaw v. State*, 336 Ga. App. 700, 701 (2) (786 SE2d 245) (2016).

4. Burkes contends that the evidence was insufficient to support the conviction. The contention is without merit.

"Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor

12

of the judge's findings of fact." *Stroud*, supra at 129 (3) (footnote and punctuation omitted). A person commits the offense of trafficking in methamphetamine when he "sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . or any mixture containing . . . methamphetamine[.]" OCGA § 16-13-31 (e) (2015). The evidence was sufficient to support Burkes's conviction for trafficking in methamphetamine. See *Culajay v. State*, 309 Ga. App. 631, 634 (1) (710 SE2d 846) (2011).

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*